UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

CARL WOODS,

                Plaintiff,

     v.

STATE OF WASHINGTON, et al.,

                Defendant.

CASE NO. C10-117RSM

ORDER ON MOTION FOR
SUMMARY JUDGMENT

      This matter is before the Court for consideration of defendants' motion for summary judgment. Dkt. # 55. Plaintiff has opposed the motion. The Court has fully considered the parties' memoranda and the supporting declarations.   For the reasons set forth below, defendants' motion shall be granted in its entirety.

BACKGROUND

      Plaintiff Carl Woods has been employed as a painter by the University of Washington since 1991 and as a Lead Painter since 1999.   He filed this complaint for racial discrimination in employment pursuant to the Civil Rights Act of 1866, 42 U.S.C. §1981 ("§1981"); Title VII of

1  the Civil Rights Act of 1964, as amended, 42 U.S.C. §2000e *et seq*. ("Title VII"), and the

2  Washington Law Against Discrimination, RCW 49.60 *et seq*. ("WLAD").[1]   The complaint is

3  based on allegations that plaintiff has been subjected to discriminatory behavior since 1999.[2]

4  Under each statute, he asserts a separate cause of action for racial discrimination, hostile work

5  environment, and retaliation.  He names as defendants the State of Washington, the University of

6  Washington, and three individuals, Richard Cheney, Allen Frankenhauser, and Brian

7  Schliemann.[3]   Apart from his claim of retaliation under § 1981, which is asserted against the

8  three individual defendants, plaintiff did not limit his causes of action as to specific defendants.

9       Defendants previously filed a motion for partial judgment on the pleadings to narrow the

10  issues in this case by dismissal of untenable causes of action.  Dkt. # 20.  The Court granted in

11  part and denied in part the motion, dismissing all claims except plaintiff's claims under 42

12  U.S.C. § 1981 and RCW 49.60 against defendants Richard Chaney and Allen Frankenhauser in

13  their individual capacities, and plaintiff's Title VII claims against the State of Washington and

14  the University of Washington.  Dkt. # 68.  The Court also dismissed all claims based on events

15  or actions of the defendants prior to March 1, 2006, as barred by an earlier Settlement Agreement

16  and Release.  *Id*.  This motion for summary judgment seeks dismissal of the claims remaining

17  after the Court's prior Order.

18

19

20       [1] Plaintiff does not plead his race anywhere in the complaint, other than to include
himself among the group of "employees of color" about whom "white employees" allegedly
21  made derogatory and discriminatory comments.  Complaint, Dkt. # 1, ¶ 5.3.  However, it appears
from plaintiff's further allegations that he is African American and thus a member of a protected
22  class.
     [2] Plaintiff filed a discrimination suit against the University of Washington in 2006.  The
23  matter was settled by agreement.  Dkt. # 24.
     [3] Defendants' moving papers use the spelling "Schlieman" for this defendant.  The Court
24  shall use the spelling that appears in the caption, the complaint, and the answer.

1

DISCUSSION

2

**I. Summary Judgment Standard**

3 The Court shall grant summary judgment "if the movant shows there is no genuine

4 dispute as to any material fact and the movant is entitled to a judgment as a matter of law."

5 Fed.R.Civ.P. 56(a) (as amended December 1, 2010).   An issue is "genuine" if "a reasonable

6 jury could return a verdict for the nonmoving party" and a fact is material if it "might affect the

7 outcome of the suit under the governing law." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242,

8 248 (1986).  A party asserting that a fact cannot be or is disputed must support the assertion by

9 citing to particular parts of materials in the record, including deposition, documents,

10 electronically stored information, affidavits or declarations.  Fed.R.Civ.P. 56(c)(1)(A).  The

11 Court need only consider the cited materials, but may in its discretion consider other materials in

12 the record.  Fed.R.Civ.P. 56(c)(3).  The Court may also render judgment independent of the

13 motion, and grant the motion on grounds not raised by a party, after giving notice and a

14 reasonable time to respond.  Fed.R.Civ.P. 56(f)(2).

15 **II**. **Analysis**

16 **A.  Motion to Strike**

17 Plaintiff has moved to strike from defendants' supporting exhibits certain designated

18 documents attached to the Declaration of John Crosetto, Dkt. # 56.   Plaintiff contends that the

19 documents, which are from his personnel file, constitute inadmissible hearsay.  Plaintiff has,

20 however, offered one of the very same documents, a counseling memorandum addressed to him,

21 to support his opposition, as well as many other documents from his personnel file.  Declaration

22 of Carl Woods, Dkt. # 63, Exhibit M.   This undermines his contention that the documents are

23 inadmissible.

24

1    The Court finds that the Declaration of John Crosetto, stating that he makes his

2    declaration upon personal knowledge, and that the documents provided are true and correct

3    copies, meets the standards set forth in Fed.R.Civ.P. 56(c)(4).  The documents are admissible as

4    business records of "regularly conducted activity" under Rule 803(6) of the Federal Rules of

5    Evidence.  To the extent that any of the content of the records represents hearsay, the Court has

6    not considered it for the truth of the matter asserted.   The motion to strike is accordingly

7    DENIED.

8         **B.  Claims of Hostile Environment**

9         Hostile work environment claims under Title VII contain the same elements as a § 1981

10   hostile work environment claim and, thus, the "legal principles guiding a court in a Title VII

11   dispute apply with equal force in a § 1981 action." *Manatt v. Bank of America*, 339 F.3d 792,

12   797. (9th Cir. 2003).  In order to establish a racially hostile work environment, the plaintiff must

13   prove (1) that he was subjected to slurs, insults, jokes or other verbal comments or physical

14   contact or intimidation of a racial nature; (2) the conduct was unwelcome; (3)  the conduct was

15   sufficiently severe or pervasive to alter the conditions of his employment and create a racially

16   abusive or hostile work environment; (4) he perceived the working environment to be abusive or

17   hostile; and (5) a reasonable man in the plaintiff's circumstances would consider the working

18   environment to be abusive or hostile.  *Fuller v. City of Oakland, California*, 47 F.3d 1522, 1527

19   (9th Cir.1995) (Title VII);  *Johnson v. Riverside Healthcare System, L.P.,* 534 F. 3d 1116, 1122

20   (9th Cir. 2008).  WLAD is similar for elements (1) through (3), but includes an additional

21   requirement that management either knew or should have known of the hostility, or participated

22   in it.  RCW 49.60.180(3);  *Glasgow v. Georgia-Pacific Corp.*, 103 Wash. 2d 401, 693 P. 2d 708

23   (1985).

24

1    Whether the environment constituted a racially hostile work environment is determined

2    by looking at the totality of the circumstances, including the frequency of the harassing conduct,

3    the severity of the conduct, whether the conduct was physically threatening or humiliating or a

4    mere offensive utterance, and whether it unreasonably interfered with an employee's work

5    performance. *Harris v. Forklift Systems, Inc.*, 510 U.S. 17, 23 (1993). "A plaintiff must show

6    that the work environment was both subjectively and objectively hostile." *McGinest v. GTE*

7    *Service Corp.*, 360 F.3d 1103, 1113 (9th Cir.2004); *see also Fuller*, 47 F.3d at 1527 (citing

8    *Harris*, 510 U.S. at 21-22). For the objective element, the Ninth Circuit has adopted the

9    "reasonable victim" standard. *Ellison v. Brady*, 924 F.2d 872, 878-80 (9th Cir.1991). A hostile

10   work environment, by its "very nature involves repeated conduct." *Nat'l R.R. Passenger Corp. v.*

11   *Morgan*, 536 U.S. 101, 115, 122 S.Ct. 2061, 153 L.Ed.2d 106 (2002).

12   Defendants move for summary judgment on plaintiff's claims of a hostile work

13   environment on the basis that the majority of his allegations pre-date the March 1, 2006

14   Settlement Agreement and Release mentioned above at note 2. The Court ruled earlier that

15          the settlement agreement and the dismissal with prejudice of plaintiff's lawsuit are
            dispositive of all claims that plaintiff alleged or could have alleged against the
16          University of Washington or its employees for events or acts that occurred before
            March 1, 2006. Pursuant to the agreement, plaintiff may not assert or allege any
17          claims based on pre-March 1, 2006 events, or use them as context for his later-arising
            claims.
18
     Defendants' motion for partial summary judgment on this issue was granted. Dkt. # 68.
19
20   In opposing summary judgment now, plaintiff has listed twenty-two separate comments

21   or incidents which, he contends, demonstrate harassment and a racially hostile environment.

22   Plaintiff's Opposition, Dkt. # 59, pp. 16-17. Plaintiff does not cite to the record to support his

23   list, or give the dates of these comments or incidents. This failure renders plaintiff's opposition

24   on the hostile environment issue insufficient under Rule 56(c)(1)(A). The Court has

ORDER ON MOTION FOR SUMMARY JUDGMENT - 5

1    nevertheless reviewed the Declaration of Carl Woods to find the factual basis for these

2    assertions, and has determined that all but four of the incidents or comments took place before

3    March 1, 2006.  That includes comments and actions by Art Wake, Rick Parfitt, Kathryn Hansen,

4    Jim Bals, and Dannette Rodgers.  Declaration of Carl Woods, Dkt # 63, ¶¶ 9-20.  Plaintiff's

5    claims arising from these matters were resolved by the 2006 settlement and cannot be raised

6    again.

7        The remaining four allegations involve Brian Schliemann, who worked under plaintiff's

8    direction in Shop 58, the paint shop for which plaintiff is Lead Painter.  Plaintiff asserts in his

9    opposition that Mr. Schliemann made "sexually aggressive comments" to plaintiff's wife.  The

10   factual basis for this allegation appears in plaintiff's declaration under the heading "Schlieman's

11   [sic] Inappropriate Sexual conduct."  Declaration of Carl Woods, Dkt. # 63, p. 10 and ¶ 29.  This

12   sexual comment does not establish a racially hostile environment.  Plaintiff also asserts that Mr.

13   Schliemann stated "on two separate occasions that the country was not ready for a black man or

14   a woman to be President."  Plaintiff's Response, Dkt. # 59, p. 16.  Plaintiff has not provided a

15   citation to this point in the record, and the Court cannot find a factual basis for it in Mr. Wood's

16   declaration; nowhere does he state that he heard this comment.  Dkt. # 63.  However, defendants

17   do not dispute that Mr. Schliemann made the comment and indeed have provided a copy of a

18   September 4, 2008 letter to plaintiff indicating that the University of Washington investigated the

19   allegation and that the "issues have been addressed."  Declaration of John Crosetto, Dkt. # 58, p.

20   48.  It appears from this letter that this allegation falls outside the statutory period for plaintiff's

21   Title VII claim, as his complaint to the Equal Employment Opportunity Commission ("EEOC")

22

23

24

1   was not filed until October 9, 2009, more than a year later.[4]  Thus, even if plaintiff had alleged

2   this comment in his declaration, it could not be considered in respect to his Title VII claim.

3          The remaining allegations about Mr. Schliemann are that he referred to plaintiff as a

4   "Dick Head" after plaintiff assigned him work, and that he "constantly" refused to follow

5   directions from plaintiff, his Lead.  Plaintiff's Response, Dkt. # 59, p. 16.  Again, plaintiff has

6   failed to cite to the record for these allegations, but the Court has found some relevant factual

7   statements in plaintiff's declaration.  Dkt. # 63, ¶¶ 24, 26, 27.  These events took place in 2006

8   and 2007, and thus are outside the statutory period for a Title VII complaint, which is the only

9   claim that plaintiff has against the University of Washington.

10          Plaintiff has thus wholly failed to produce any cognizable evidence of a hostile

11   workplace environment.  Even if the four allegations regarding Mr. Schliemann could be

12   considered, they do not amount to the type of repeated, pervasive conduct that rises to the level

13   of a racially hostile environment.  *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. at 115.

14   Moreover, it appears that Mr. Schliemann's statements fall with the "mere offensive utterances"

15   category and did not unreasonably interfere with plaintiff's work performance.  *Harris v. Forklift*

16   *Systems, Inc.*, 510 U.S. at 23.  Plaintiff states in his declaration that when the University

17   transferred Mr. Schliemann out of his shop (apparently in an attempt to remedy the situation with

18   Mr. Schliemann's conduct), plaintiff objected.  Declaration of Carl Woods, Dkt. # 63, ¶ 44.  He

19   states, "Brian Schlieman has the ability to do really good paint work when he wants to and is not

20   clowning around trying to offend me.  My wanting to keep Schlieman in the shop . . . was a

21   decision based on the lesser of two evils and my desire to complete my jobs on time and

22   _____

23          [4] Section 706(e)(1) of Title VII provides that a charging party must file an EEOC charge
     within 300 days (for a deferral state) of the alleged unlawful employment practice.  42 U.S.C. §
24   2000e-5(e)(1).

1  correctly." *Id*.  Plaintiff's characterization of Mr. Schliemann's conduct as "clowning around

2  trying to offend me" undermines his claim that this same person created an atmosphere that was

3  racially abusive and hostile; instead it puts Mr. Schliemann's comments in the category of mere

4  offensive utterances which are not actionable under Title VII.

5       As plaintiff has failed to point to any cognizable evidence of a racially hostile workplace,

6  defendants' motion for summary judgment shall be granted on this claim.

7       **C.  Discrimination by Disparate Treatment**

8       Federal and state law prohibits an employer from taking an adverse employment action

9  against an employee because of his or her race. See 42 U.S.C. § 2000e-2;  *Leong v. Potter*, 347

10  F.3d 1117, 1124 (9th Cir.2003);  RCW 49.60.180.  "A person suffers disparate treatment in his

11  employment when he or she is singled out and treated less favorably than others similarly

12  situated on account of race" or another protected characteristic. *Cornwell v. Electra Central*

13  *Credit Union*, 439 F.3d 1018, 1028 (9th Cir.2006).  In order to prevail on a claim of

14  discrimination based on disparate treatment, a plaintiff must first establish a prima facie case that

15  gives rise to an inference of unlawful discrimination.  If the plaintiff succeeds in establishing a

16  prima facie case, the burden then shifts to the defendant to articulate a legitimate,

17  nondiscriminatory reason for its allegedly discriminatory conduct. If the defendant provides such

18  a reason, then the burden shifts back to the plaintiff to show that the employer's reason is a

19  pretext for discrimination. *McDonnell Douglas v. Green*, 411 U.S. 792, 802-805, 93 S.Ct. 1817,

20  36 L.Ed.2d 668 (1973); *Vasquez v. County of Los Angeles*, 349 F.3d 634, 640 (9th Cir.2003);

21  *Marquis v. City of Spokane*, 130 Wash.2d 97, 113, 922 P.2d 43 (1996).[5]

22

23  _____

24       [5] A similar analysis applies under § 1981 and Title VII. *See Fonseca v. Sysco Food Services of Arizona, Inc.*, 374 F.3d 840, 850 (9th Cir.2004).

1    In order to establish a prima facie case of disparate treatment, plaintiff must demonstrate

2    that (1) he belongs to a protected class; (2) he performed his job satisfactorily; (3) he suffered an

3    adverse employment action; and (4) his employer treated him differently than a similarly situated

4    employee who does not belong to the same protected class. *Cornwell*, 439 F.3d at 1028 (*citing*

5    *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973)).

6    "The requisite degree of proof necessary to establish a prima facie case ... on summary judgment

7    is minimal and does not even need to rise to the level of a preponderance of the evidence."

8    *Cordova v. State Farm Ins. Co.*, 124 F.3d 1145, 1148 (9th Cir.1997).

9    Plaintiff has arguably met the first two requirements of his prima facie case by asserting

10   that he is a member of a protected class (African-American) and he has performed his job

11   satisfactorily.  The focus of defendants' summary judgment motion is on the adverse

12   employment action element.

13   For Title VII discrimination claims under 42 U.S.C. section 2000e-2(a), an adverse action

14   is one that "materially affect[s] the compensation, terms, conditions, or privileges of the

15   [plaintiff's] employment." *Chuang v. Univ. of Cal. Davis, Bd. of Trustees*, 225 F.3d 1115, 1126

16   (9th Cir.2000).   It is well established that a failure to promote constitutes an adverse action.

17   *National Railroad Passenger Corp. v. Morgan*, 536 U.S. 101, 114, 122 S.Ct. 2061, 153 L.Ed.2d

18   106 (2002)  ("acts such as termination, failure to promote, denial of transfer, or refusal to hire ...

19   are actionable 'unlawful employment practices' ").  However, plaintiff did not plead failure to

20   promote, or allege any facts to support such a claim, in his complaint.  Dkt. # 1.

21   Plaintiff first alleged a claim of failure to promote him at his deposition on September 9,

22   2010.  Declaration of John Crosetto, pp. 21-30.  Defendants then asked, on two occasions, that

23   plaintiff identify the relevant job openings that he was denied, and the similarly-situated persons

24

ORDER ON MOTION FOR  SUMMARY JUDGMENT - 9

1   who were promoted instead.  *Id.*, pp. 38-40.  Counsel for plaintiff did not respond to the request.

2   *Id.*, ¶ 13.   Plaintiff has not amended his complaint to assert a claim of failure to promote, nor

3   requested leave to do so.  Defendants argue that it would be futile for him to do so, as two of the

4   five positions which he identifies in his declaration were filled before March 1, 2006 and cannot

5   be asserted now to support his claim; one position was cancelled before it was filled, and one

6   was under the hiring direction of a different department and not within the scope of duties of

7   either individual defendant.  The remaining position, identified by defendants as # 30183, falls

8   outside the statute of limitations for Title VII and RCW 49.60 claims.  That leaves § 1981 as the

9   sole basis for a claim of failure to promote if plaintiff were to amend his complaint, but the Court

10  has determined that the § 1981 claims may be asserted only against the two individuals, and in

11  their individual capacities only.

12          Plaintiff's opposition papers are silent on the issue of his failure to plead a claim of

13  failure to promote, or facts to support such a claim.  Dkt. # 59, pp. 13-14.  His inclusion of them

14  in his declaration does not substitute for proper pleading, as an essential element of his claim of

15  disparate treatment is lacking.  Nowhere does he request leave to amend his complaint, explain

16  his failure to plead, or argue against or even address defendants' assertions regarding the futility

17  of including the five positions plaintiff mentions in his declaration.  Declaration of Carl Woods,

18  Dkt. # 63, ¶¶ 60-67.  In light of this failure, the Court deems his allegations of failure to promote

19  not properly raised and not cognizable.  They cannot be used to defeat summary judgment.

20          Absent a demonstration of a failure to promote him, plaintiff fails to meet the

21  requirement of showing an adverse employment action.  The remaining allegations he makes---

22  that he received a "formal counseling" when white co-workers did not, that defendants "allowed

23  and condoned the undermining and disrespectful treatment" of their Lead, and that defendant

24

1  Cheney "allowed the hostile work environment to exist"---do not amount to adverse employment

2  actions.  As to the latter two allegations, they are so vague, conclusory, and unsupported by any

3  citation that would indicate the time frame, that they cannot be recognized as factual allegations.

4      As plaintiff has neither pled nor demonstrated any adverse employment action, he has

5  failed to establish a prima facie case of disparate treatment based on his race.  Defendants'

6  motion for summary judgment shall accordingly be granted as to plaintiff's racial discrimination

7  claims under Title VII, § 1981, and RCW 49.60.

8      **D.  Retaliation**

9      It is unlawful to discriminate against an individual "because he has opposed any practice

10  made an unlawful employment practice by this subchapter, or because he has made a charge,

11  testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under

12  this subchapter." 42 U.S.C. § 2000e-3(a).  The prima facie case a plaintiff must establish for a

13  retaliation claim, however, differs from the prima facie case a plaintiff must establish for

14  disparate treatment.  To state a prima facie case for retaliation, plaintiff must establish: (1) he

15  was engaged in protected activity; (2) defendant took an adverse employment action; and (3) a

16  causal connection existed between plaintiff's protected activity and defendant's adverse

17  employment action. *Cornwell*, 439 F.3d at 1034-35.[6]  For Title VII retaliation claims, adverse

18  action is defined more broadly than for disparate treatment claims; it is not limited to workplace-

19  related or employment-related acts and harm. *Burlington Northern & Santa Fe Railway Co. v.*

20  *White*, 548 U.S. 53, 67, 126 S.Ct. 2405, 165 L.Ed.2d 345 (2006).  Instead, for purposes of a Title

21  _____

22      [6] The courts apply the same structured analysis to retaliation claims brought pursuant to
   §1981.  *See, e.g., Leland v. City and County of San Francisco,* 576 F.Supp.2d 1079, 1094

23  (N.D.Cal., 2008).  Washington law uses the same three elements for a prima facie case of
   retaliation brought pursuant to RCW 49.60.210.  *Hollenback v. Shriners Hospitals for Children*,

24  149 Wash.App. 810, 821 206 P.3d 337 (2009).

VII retaliation claim, adverse action requires a showing that "a reasonable employee would have found the challenged action materially adverse," meaning "it might well have 'dissuaded a reasonable worker from making or supporting a charge of discrimination.' " *Id*. at 68, 126 S.Ct. 2405. Finally, for the third element, "causation sufficient to establish the third element of the prima facie case may be inferred from . . . the proximity in time between the protected action and the allegedly retaliatory employment decision." *Cornwell,* 439 F.3d at 1035.

Plaintiff's identification of the protected activity asserted to meet the first element is not entirely clear in his complaint. For his § 1981 claim of retaliation against individual defendants Frankenhauser and Cheney, plaintiff alleges that these defendants,

> with malice or reckless indifference or disregard of Plaintiff's protected rights, retaliated against Plaintiff, took adverse employment actions against him, and subjected him to changes in the terms and conditions of his employment, because Plaintiff complained about what he reasonably believed to be unlawful employment practices, in violation of 42 U.S.C. § 1981.

Complaint, Dkt. # 1, ¶ 7.2. This paragraph does not identify any specific complaint as his protected activity. Plaintiff's Title VII retaliation claim, on the other hand, states,

> Shortly after settlement of the previous lawsuit and previous manager's retirement in 2006, Plaintiff Carl Woods began to experience a series of incidents he believed amounted to unlawful employment practices. Plaintiff complained about Defendants' conduct but nothing was done to remedy the situation. After Plaintiff's complaints, Defendants began a campaign of harassing retaliatory conduct against Plaintiff Carl Woods.
>
> Defendants retaliated against Plaintiff Carl Woods because he complained about conduct he reasonably believed to be unlawful employment practices in violation of Title VII of the Civil Rights Act of 1964, as amended by the Civil rights Act of 1991.

*Id*., ¶ 11.2 - 11.3. Finally, plaintiff's retaliation claim under RCW 49.60 states,

> Shortly after settlement of the previous lawsuit and previous manager's retirement in 2006, Plaintiff Carl Woods began to experience a series of incidents he believed amounted to unlawful employment practices. Plaintiff Carl Woods complained

1   about Defendants' conduct but nothing was done to remedy the situation.  After
    Plaintiff's complaints, Defendants began a campaign of harassing retaliatory
2   conduct against Plaintiff Carl Woods.

3   Defendant retaliated against Plaintiff Carl Woods because he complained about
    conduct he reasonably believed to be unlawful employment practices in violation
4   of the Laws Against Discrimination, RCW 49.60.210.

5   *Id.*, ¶ 14.2 - 14.3.

6       Thus, while plaintiff's § 1981 claim does not identify any specific protected activity, his

7   Title VII and RCW 49.60 claims refer to complaints he made regarding a "series of incidents he

8   believed amounted to unlawful employment practices" which followed his 2006 lawsuit.  That is,

9   the protected activity was not the 2006 lawsuit itself, but subsequent complaints he made to

10  oppose the treatment to which he was subjected after that 2006 lawsuit (and after his previous

11  manager retired).  In the body of his complaint, plaintiff specifically relates these allegations to

12  the time defendant Frankenhauser took on supervisory duties.  *Id.*, ¶¶ 5.7 – 5.8.

13      Informal as well as formal complaints or demands are protected activities under Title VII.

14  *See Passantino v. Johnson & Johnson Consumer Prods., Inc.*, 212 F.3d 493, 506 (9th Cir.2000).

15  However, in order to be a protected activity, the plaintiff's opposition must have been directed

16  toward a discriminatory act by an employer or an agent of an employer. *See Silver v. KCA, Inc.*,

17  586 F.2d 138, 140–42 (9th Cir.1978) (employee's opposition to a racially discriminatory act of a

18  co-employee cannot be the basis for a retaliation action).

19      Defendants have moved for summary judgment on plaintiff's retaliation claims on the

20  basis that he cannot demonstrate that he meets the three requirements of a prima facie case.  In

21  opposing the motion, plaintiff states, as to the first element, simply that "Defendants cannot

22  dispute that Carl Woods engaged in protected activity when he made complaints of

23  discrimination to his supervisors and to the Director of Maintenance & Alterations, Rick

24

1    Cheney." Plaintiff's Opposition, Dkt. # 59, p. 21. That sentence, together with a citation to

2    *Passantino* regarding informal complaint (set forth above), is the total substance of his statement

3    on his protected activity. Nowhere has he pointed to any particular act or complaint which he

4    identifies as a protected activity. This conclusory statement quoted above wholly fails to meet

5    the Rule 56 requirement that a party "asserting that a fact cannot be . . . disputed **must** support

6    the assertion by: (A) **citing to particular parts of materials in the record** . . .or (B) **showing**

7    that the materials cited [by the opposing party] do not establish the absence . . . of a genuine

8    dispute. . . ." Fed.R.Civ.P. 56(c)(1)(A), (B) (emphasis added). Plaintiff has both failed to cite to

9    any evidence in the record, and failed to address the examples cited by defendants in their

10   argument. His opposition thus fails to establish the first element of his prima facie case of

11   retaliation. Further, without identification of any particular complaint, plaintiff cannot meet the

12   third requirement of his prima facie case, the causal connection between a specific protected

13   activity and a specific adverse employment action.

14          Nor has plaintiff adequately shown any adverse employment action. While the scope of

15   an adverse action is broader for retaliation claims than for discrimination claims, even under this

16   broader view plaintiff fails to meet the standards for his prima facie case. In pointing to actions

17   which he claims are likely to deter a reasonable worker from making or supporting a charge of

18   discrimination, he lists the following: "[s]upervisor overlooking insubordination by employees

19   working under Woods," "[r]epeated and ongoing acts of humiliation," "Schlieman filing a false

20   allegation against Woods after Woods' sexual harassment complaint against Schlieman,"

21   "[s]upervisor discouraging Woods from filing the complaint and threatening Woods should he

22   proceed with the complaint," and "[f]ailure to promote Woods after 11 successful years as a

23   Lead." The Court notes that the two allegations regarding the Schliemann complaint do not

24

1 | constitute adverse action as a matter of law.  These allegations arise from plaintiff's complaint

2 | "about Schlieman's posting of bikini clad women on workplace walls . . ." and comments of a

3 | sexual nature made by Mr. Schliemann.  Complaint, Dkt. # 1, ¶¶ 30, 31.  An employee's

4 | opposition to a discriminatory act of a co-employee cannot be the basis for a retaliation action.

5 | *Silver v. KCA, Inc.*, 586 F.2d at 140–42.  Nor is a supervisor's attempt to dissuade plaintiff from

6 | filing that complaint an adverse action.  *Burlington Northern & Santa Fe Railway Co. v. White*,

7 | 548 U.S. 53, 68.   The remaining three allegations will be addressed below.

8 |       After setting forth his allegations of adverse employment action, plaintiff contends that

9 |       When taken together, these retaliatory acts amount to a severe and sustained
campaign of retaliation that was reasonably likely to dissuade Woods from engaging
10 | in protected conduct.  Absent a judicial remedy, the type of actions Woods asserts
defendants engaged in could discourage other employees from speaking freely about
11 | discrimination.

12 |       Nor can there be much dispute that defendants' actions of undermining Plaintiff as
an [sic] lead, *not providing her with the mentorship she needs to be successful at*
13 | *her work and with her students, suborning student negative and sometimes unfounded*
*allegations against plaintiff, and cancelling plaintiff's classes under the pretext of*
14 | *"safety"dissuade others from bringing a complaint.*

15 | Plaintiff's Opposition, Dkt. # 59, p. 22 (emphasis added).

16 |       As with his protected activities, plaintiff has completely failed to cite to the record to

17 | establish a factual basis for his allegations of adverse employment actions.  This is fatal to his

18 | retaliation claim.  In the absence of a citation to a specific incident or adverse action, establishing

19 | the date of that adverse action, the causal connection element cannot be analyzed.   Further, the

20 | inclusion of argument from what is obviously a different case compounds the problem by raising

21 | a question as to how many of plaintiff's uncited conclusory allegations, such as "repeated and

22 | ongoing acts of humiliation" might actually arise from the other case, not plaintiff's.

23 |

24 |

ORDER ON MOTION FOR  SUMMARY JUDGMENT - 15

1    As plaintiff has failed to demonstrate any of the three requirements for a prima facie case

2  of retaliation, defendants' motion for summary judgment shall be granted at to that claim as well,

3  as to all statutory bases asserted.  In light of this complete disposition of plaintiff's claims, the

4  Court need not reach the issue of qualified immunity of the individual defendants.

5                                                CONCLUSION

6    Defendants' motion for summary judgment (Dkt. # 55) is GRANTED as to plaintiff's

7  Title VII claims of hostile environment, disparate treatment, and retaliation against the

8  University of Washington and the State of Washington, and these claims are DISMISSED.

9  Defendants' motion is also GRANTED as to all of plaintiff's claims of hostile environment,

10 disparate treatment, and retaliation brought pursuant to § 1981 and RCW 49.60 against the

11 individual defendants Rick Cheney and Al Frankenhauser, and these claims are DISMISSED.

12   This Order disposes of all claims remaining in this action.  The Clerk shall enter

13 judgment in favor of defendants on all claims.

15   DATE: January 19, 2011.

18                                    RICARDO S. MARTINEZ
19                                    UNITED STATES DISTRICT JUDGE